UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
BRENDAN A. HURSON
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0782
MDD_BAHChambers@mdd.uscourts.gov

July 20, 2023

LETTER TO ALL COUNSEL OF RECORD

Re: *Manuel A. v. Kilolo Kijakazi, Acting Commissioner, Social Security Administration*
    Civil No. 22-2739-BAH

Dear Counsel:

On October 25, 2022, Plaintiff Manuel A. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny his claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 5), the parties' dispositive filings[1] (ECFs 6 and 10), and Plaintiff's reply (ECF 11). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will DENY Plaintiff's motion, GRANT Defendant's motion, and AFFIRM the Commissioner's decision. This letter explains why.

I.   **PROCEDURAL BACKGROUND**

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") on September 11, 2017, alleging a disability onset of January 1, 2016. Tr. 150–53. Plaintiff's claim was denied initially and on reconsideration. Tr. 78–81, 88–90. On December 9, 2019, an Administrative Law Judge ("ALJ") held a hearing. Tr. 26–54. Following the hearing, on February 26, 2020, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 11–25. The Appeals Council denied Plaintiff's request for review of the decision. Tr. 714–21. Plaintiff then appealed to this Court, Tr. 722–28, which granted Defendant's consent motion to remand the case to the SSA on September 30, 2021. Tr. 729–31.

On remand, the Appeals Council vacated the ALJ's February 6, 2020 decision. Tr. 732–

---

[1] Standing Order 2022-04 amended the Court's procedures regarding SSA appeals to comply with the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), which became effective December 1, 2022. Under the Standing Order, the nomenclature of parties' filings has changed to "briefs" from "motions for summary judgment." Here, both parties docketed their filings as motions for summary judgment.

[2] 42 U.S.C. §§ 301 et seq.

38. A different ALJ held a new hearing on Plaintiff's claim on May 13, 2022.[3] Tr. 670–98. On May 25, 2022, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. Tr. 653–69. The Appeals Council declined to review the ALJ's May 25, 2022 decision, Tr. 647–52, so this decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

## II.     THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "did not engage in substantial gainful activity during the period from his alleged onset date of January 1, 2016 through his date last insured of September 30, 2021." Tr. 659. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "lumbar degenerative disc disease, obesity, hearing loss, and vertigo." *Id*. The ALJ also determined that Plaintiff suffered from the non-severe impairments of "a nonsevere physical MDI," "residual . . . an[o]rectal carcinoma," "diarrhea," "malignant neoplasm of the rectum," "minor gastrointestinal symptoms," and "internal hemorrhoids." Tr. 660. At step three, the ALJ determined that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id*. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except can lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently; sit for 6 hours in an 8-hour workday; stand and walk for 6 hours in an 8-hour workday; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; never climb ropes, ladders, or scaffolds; occasionally be exposed to moving mechanical parts and unprotected heights; must work in a moderately loud work environment or quieter[.]

---

[3] The transcript relevant to this hearing notes that the hearing occurred on "May 13, 2002" *and* on "August 19, 2021." Tr. 670, 672. The Court infers that the hearing actually occurred on May 13, 2022—the date specified by the ALJ during the hearing. Tr. 672.

Tr. 661. The ALJ found that Plaintiff was able to perform past relevant work as a cleaner/housekeeper (DOT[4] #323.687-014) as the job is actually and generally performed. Tr. 664. Therefore, the ALJ concluded that Plaintiff was not disabled. *Id.*

### III.   LEGAL STANDARD

As noted, the scope of my review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV.   ANALYSIS

On appeal, Plaintiff raises three arguments: (1) that the ALJ erred by failing to find Plaintiff disabled pursuant to Listing 1.04A; (2) that the ALJ erred by determining that Plaintiff has the RFC to perform light work; and (3) that the ALJ erred by concluding that Plaintiff can perform past relevant work at step four.[5] ECF 6-1, at 7–12. Defendant counters that Plaintiff's degenerative disc disease did not warrant evaluation under any Listing at step three and that the ALJ properly evaluated Plaintiff's degenerative disc disease under Listing 1.15—the regulation which was in effect at the time of the ALJ's May 25, 2022 decision. ECF 10-1, at 5–16. Defendant also avers that the ALJ properly considered Plaintiff's symptoms and adequately explained how

---

[4] The "DOT" is shorthand for the Dictionary of Occupational Titles. The Fourth Circuit has explained that "[t]he *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

[5] Plaintiff suggests in his reply that the ALJ also "erred [by] retroactively applying Listing 1.15." ECF 11, at 4. Because this argument appears for the first time in Plaintiff's reply, the Court is not obligated to address it. *See Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by failing to present it in its opening brief or by failing to develop [its] argument—even if [its] brief takes a passing shot at the issue.") (internal quotation marks omitted). Regardless, the Court discusses the application of Listing 1.15. *See infra* Section IV.A.

he evaluated administrative findings and opinion evidence in determining Plaintiff's RFC. *Id.* at 16–23. Lastly, Defendant avers that Plaintiff waived his step-four argument by failing to adequately develop the argument. *Id.* at 23–24.

    A.    <u>The ALJ Did Not Err at Step Three.</u>

The Court begins by considering Plaintiff's argument that the ALJ erred at step three by failing to evaluate his lumbar degenerative disc disease pursuant to Listing 1.04A, which was in effect at the time Plaintiff filed his disability claim. ECF 6-1, at 7–9. The Listing of Impairments (the "Listings") describes, "for each of the major body systems[, the] impairments that [the SSA] consider[s] to be severe enough to prevent an individual from doing any gainful activity . . . ." *Figgs v. Saul*, No. 1:20-CV-00334-JMC, 2021 WL 3930708, at *5 (D. Md. Sept. 2, 2021) (quoting 20 C.F.R. § 404.1525(a)). At step three, an ALJ determines whether a claimant's impairments are severe enough to meet or medically equal a particular Listing. *See* 20 C.F.R. § 404.1525. "In evaluating a claimant's impairment" under the Listings at step three, "an ALJ must fully analyze whether a claimant's impairment meets or equals a 'Listing' where there is factual support that a listing could be met." *Huntington v. Apfel*, 101 F. Supp. 2d 384, 390 (D. Md. 2000) (citing *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)).

Relevant to this case, Listing 1.04A addressed disorders of the spine. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A (2017). The Listing required a claimant to demonstrate a spine disorder ("e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture") which resulted in the "compromise of a nerve root (including the cauda equina) or the spinal cord," with "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." *Id*.

On December 3, 2020, following a notice-and-comment period, the SSA issued rules which revised the musculoskeletal Listings. *See* 85 Fed. Reg. 78164, 78164 (Dec. 3, 2020). In so doing, the SSA deleted Listing 1.04A and created new Listings relevant to musculoskeletal disorders, including Listing 1.15.[6] *See generally id.*; 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.15. On April 2, 2021, the new musculoskeletal Listings took effect with respect to "applications filed on or after [April 2, 2021], and to claims that are pending on or after [April 2, 2021]." 85 Fed. Reg. 78164,

---

[6] As discussed above, the ALJ considered Listing 1.15 at step three in this case. Tr. 660. Listing 1.15 incorporates some of the criteria relevant to Listing 1.04A. *See* 83 Fed. Reg. 20646, 20652 (May 7, 2018) ("Proposed [Listing] 1.15 . . . incorporates and clarifies the provisions of current 1.04A for evidence of nerve root compression."). But Listing 1.15 also incorporates certain criteria which Listing 1.04A did not. For instance, Listing 1.15 requires "findings on imaging [which are] consistent with compromise of a nerve root(s) in the cervical or lumbosacral spine." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.15; *see also* 83 Fed. Reg. 20646, 20652 (May 7, 2018) (noting that "[a] criterion for imaging, which [was] not explicitly required in [Listing] 1.04A, . . . is a component necessary to establishing the disorder").

78164 (Dec. 3, 2020). Regarding the retroactivity of the revised Listings, the SSA's rules provide, in pertinent part, that:

> We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions. If a court reverses our final decision and remands a case for further administrative proceedings after the effective date of these final rules, we will apply these final rules to the entire period at issue in the decision we make after the court's remand.

*Id.* n.2. Here, in the ALJ's February 26, 2020 decision, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of" Listing 1.04. Tr. 705. After Plaintiff appealed that decision—and after the SSA promulgated revisions to the musculoskeletal Listings as discussed above—this Court granted a consent motion to remand Plaintiff's case to the SSA on September 30, 2021. Tr. 729. On remand, the Appeals Council vacated the ALJ's February 26, 2020 decision because, among other reasons, the ALJ "did not adequately evaluate the claimant's lumbar impairment at step three." Tr. 734. The Appeals Council noted that, based upon the evidence of record, certain medical findings "may establish that the claimant's impairments meet the revised criteria in the new Listing 1.15, which is now applicable, and should be addressed and evaluated at step three." Tr. 735. Accordingly, in his May 25, 2022 decision, the ALJ evaluated whether Plaintiff's lumbar degenerative disc disease met or equaled Listings 1.15, 1.16, and 1.18. Tr. 660.

While the ALJ's most recent decision was issued after the SSA's December 3, 2020 revisions to the musculoskeletal Listings (and the deletion of Listing 1.04A), Plaintiff argues that the ALJ was nonetheless required to evaluate Plaintiff's spinal condition under Listing 1.04A, which was the applicable Listing at the time Plaintiff filed his SSA claim. ECF 6-1, at 7; *see also* ECF 11, at 3–4 (arguing that Plaintiff had a "right to be evaluated" pursuant to Listing 1.04 because "applicants for public benefits surely have a right to have their applications evaluated in a principled and consistent manner") (citing *Lindh v. Murphy*, 521 U.S. 320, 327 (1997)).

Plaintiff's argument is unpersuasive. Congress has granted the SSA broad rulemaking authority, which includes the authority to establish and revise Listing criteria. *See* 42 U.S.C. § 405(a) ("The [Commissioner] shall have . . . authority to make rules and regulations . . . and shall adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence . . . in order to establish the right to benefits."). Even though this rulemaking authority does not expressly authorize "retroactive rulemaking," the Supreme Court has explained that not all rule revisions generate retroactivity concerns. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 213 (1988). A regulatory change raises retroactivity concerns when it: (1) impairs rights a party possessed when he acted; (2) increases a party's liability for past conduct; or (3) imposes new duties to transactions already completed. *See Landgraf v. USI Film Prod.*, 511 U.S. 244, 280 (1994). In *Landgraf*, the Supreme Court also noted that "familiar considerations of fair notice, reasonable reliance, and settled expectations offer sound guidance" in determining whether legislation raises retroactivity concerns. *Id.* at 270. The same principles of retroactivity apply to agency rulemaking, the administrative analogue to legislation. *See Bowen*, 488 U.S. at 208. However, with the general presumption against retroactivity in mind, "[a]

*Manuel A. v. Kijakazi*
Civil No. 22-2739-BAH
July 20, 2023
Page 6

regulation 'does not operate "retrospectively" merely because it is applied in a case arising from conduct antedating [its] enactment, or upsets expectations based in prior law.'" *W. Langley Civic Ass'n v. Fed. Highway Admin.*, 11 F. App'x 72, 76 (4th Cir. 2001) (alteration in *W. Langley Civic Ass'n*) (quoting *Landgraf*, 511 U.S. at 269)"Few district courts within the Fourth Circuit have issued opinions addressing [the] retroactivity of SSA rules and regulations, but those that have [done so have] upheld the application of new rules and regulations to cases pending initial determination or appeal." *Parker v. Comm'r, Soc. Sec. Admin.*, No. ADC-18-0554, 2019 WL 247539, at *5 (D. Md. Jan. 17, 2019) (collecting cases). One such court recently applied the retroactivity factors articulated in *Landgraf* to determine that an ALJ correctly applied the SSA's new musculoskeletal Listings to a plaintiff's claim, despite the claim having been filed prior to the date the new Listings took effect. S*ee Bril v. Kijakazi*, No. 5:22-CV-00002-KDB, 2022 WL 3702916, at *5 (W.D.N.C. Aug. 26, 2022) (holding that "the application of the new musculoskeletal listing to the [p]laintiff's claim was not impermissibly retroactive").

Applying the *Landgraf* factors to the instant case yields the same result. The ALJ's failure to apply Listing 1.04A to Plaintiff's claim did not impair Plaintiff's rights, as Social Security benefits "are not contractual and may be altered or even eliminated at any time." *United States R.R. Ret. Bd. v. Fritz*, 449 U.S. 166, 174 (1980). Further, the ALJ's failure to apply Listing 1.04A at step three "did not increase Plaintiff's liability for any past conduct or impose any new duties," as the Listings are "used to determine a claimant's eligibility for . . . benefits, not to regulate past conduct or impose duties of any kind on the claimant." *Bril*, 2022 WL 3702916, at *5. Moreover, the considerations of fair notice, reasonable reliance, and settled expectations outlined in *Landgraf* do not weigh in Plaintiff's favor. In this regard, the Sixth Circuit's decision in *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 646 (6th Cir. 2006), cited by Defendant and by the *Bril* court, is instructive. In that case, the Sixth Circuit considered whether an ALJ erred at step three by failing to apply Listing 9.09, which was in effect when the claimant filed her application but was deleted by the SSA during the pendency of the claimant's administrative appeal. *Id*. at 644–45. The Sixth Circuit held that the district court "properly refused to require the SSA to apply [L]isting 9.09, notwithstanding the fact that [the claimant's] claim was initially filed before the deletion of that [L]isting." *Id*. at 645. In applying the *Landgraf* factors to the facts of the claimant's appeal, the *Combs* court noted that:

> [i]t can hardly be argued that claimants become . . . impaired in reliance on the availability of [a] presumption in the [L]isting. Nor is there any indication that they file their claims, or decide what to put in their claims, based on how the agency determines whether they meet the statutory requirements for disability eligibility. Similarly, claimants have no settled expectation that the agency will use one as opposed to another algorithm for determining whether the statutory requirements are met. Finally, there is no basis for claimants to argue that they need "fair notice" of a change in the step three presumptions.

*Id*. at 646. Neither Plaintiff here, nor the claimant in *Combs*, can demonstrate that they specifically relied on the applicability of any Listing in filing their claims. Nor was Plaintiff entitled to notice of the SSA's changes in step-three presumptions. Even assuming that Plaintiff *was* entitled to fair

*Manuel A. v. Kijakazi*
Civil No. 22-2739-BAH
July 20, 2023
Page 7

notice of the SSA's amendments to the musculoskeletal Listings, the SSA's promulgation of its final rule on December 3, 2020 (which was preceded by a notice-and-comment period) predated the ALJ's May 13, 2022 hearing in this case. As such, Plaintiff—who was represented by counsel at that hearing—had ample opportunity to tailor his claim to conform with the SSA's revised step-three presumptions, had he wished to do so. In sum, the ALJ did not commit error by failing to apply Listing 1.04A to Plaintiff's claim.

      B.      The ALJ Properly Evaluated Plaintiff's RFC.

Having determined that the ALJ did not err at step three, the Court turns to Plaintiff's argument that the ALJ erroneously evaluated the RFC insofar as the ALJ determined that Plaintiff could perform light work. ECF 6-1, at 9–12. A claimant's RFC represents "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). In determining the RFC, an ALJ must "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). Moreover, "every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by 'a narrative discussion describing [ ] the evidence' that supports it." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021) (alteration in original) (citation omitted). Thus, an ALJ must both identify evidence that supports his conclusions and build an accurate and logical bridge from that evidence to his conclusions. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018). However, the ALJ "need not parrot a single medical opinion, or even assign 'great weight' to any opinions, in determining an RFC assessment." *Jackson v. Comm'r, Soc. Sec.*, No. CCB-13- 2086, 2014 WL 1669105, at *2 (D. Md. Apr. 24, 2014).

Plaintiff argues that the evidence provided by two of his attending physicians—Drs. Hinkes and Balasubramaniam—"show that he cannot perform [light] work on a regular and continuing basis." ECF 6-1, at 9. Plaintiff also avers that the ALJ erred in formulating the RFC by: (1) erroneously finding Dr. Hinkes's opinion regarding Plaintiff's limitations in walking and standing to be "internally inconsistent" and (2) erroneously determining Dr. Hinkes's opinion to be inconsistent with the remainder of the evidence "even though" Dr. Balasubramaniam "opined that [Plaintiff] is even more limited." ECF 6-1, at 11–12.

These arguments are unavailing. In his January 3, 2020 medical source statement, Dr. Hinkes limited Plaintiff to five hours of cumulative sitting and four hours of cumulative standing and walking per day. Tr. 663 (citing Tr. 619–20). However, in the statement's "recap" section, Dr. Hinkes includes figures which are inconsistent with those recorded elsewhere in the statement. *See* Tr. 621 (noting that Plaintiff is capable of four hours of cumulative sitting and one hour of cumulative standing and walking per day). Given this discrepancy, the ALJ's conclusion that Dr. Hinkes's standing and walking limitations were "internally inconsistent" (and thus, that his opinion was unpersuasive) is supported by substantial evidence. Tr. 663. The ALJ also adequately supported his conclusion that Dr. Hinkes's opinion was inconsistent with the remainder of the record. Specifically, the ALJ found Dr. Hinkes's walking and standing conclusions to be inconsistent with the record because, despite Plaintiff's "altered gait, positive straight leg raising

and reduced range of motion findings at times, [Plaintiff] has no significant and ongoing ambulatory or strength deficits and ambulates unassisted." *Id.* (citing Exhibits 7F, 9F, 11F, 12F).

With regard to the January 2, 2020 evaluation conducted by Dr. Balasubramaniam, the ALJ noted that this opinion was unpersuasive because it was "not supported by the independent examination of the claimant." Tr. 663. The ALJ also noted that Dr. Balasubramaniam's finding that Plaintiff possessed "full strength" and walked unassisted was inconsistent with his finding that Plaintiff had "positive straight leg raising findings and reduced range of motion." *Id.* In sum, the ALJ's evaluation of these medical opinions contains the requisite "logical bridge" from the evidence to the ALJ's conclusion that both opinions were not probative of Plaintiff's RFC. *Woods*, 888 F.3d at 694. As such, and because Plaintiff alleges no other errors affecting the formulation of the RFC, I find that the ALJ's RFC was supported by substantial evidence.[7]

## V.     CONCLUSION

For the reasons set forth herein, Plaintiff's motion for summary judgment, ECF 6, is DENIED and Defendant's motion for summary judgment, ECF 10, is GRANTED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Brendan A. Hurson
United States Magistrate Judge

---

[7] I do not need to address Plaintiff's argument that the ALJ erred at step four by determining that Plaintiff could perform a job that is categorized as light work. ECF 6-1, at 12. As discussed above, the ALJ's conclusion that Plaintiff can perform light work with the additional limitations noted in the RFC is supported by substantial evidence.